

Auguist 15, 2025

Tammi Hellwig, Clerk of Court
United States District Court for the Southern
District of New York
Daniel Patrick Moynihan
U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re:   USA v. Reshma Massarone
      Docket No 7:23-cr-00448-CS-1

Dear Ms. Hellwig:

Enclosed please find for filing a pro se submission by Defendant Reshma Massarone. I do not represent her in the Southern District, and am not appointed in the Southern District. I only represent her on her direct appeal to the Second Circuit. Her former attorney in the Southern District was relieved from representation. Accordingly, Ms. Massarone requests that the Court accept the enclosed as a pro se filing.

Yours truly,

Devin McLaughlin
dmclaughlin@langrock.com
DM:laf
Encl
cc:   Reshma Massarone

> Federal Rule of Criminal Procedure 37(a) is not a basis for a motion. It simply allows the Court, while an appeal is pending, to defer or deny or render an indicative decision on a motion authorized by another provision, such as Rule 33 or Rule 35. This application does not specify any other provision. Accordingly, it is denied. If Ms. Massarone intended this application as a motion to vacate sentence under 28 USC 2255, I strongly suggest that she confer with her appellate counsel on that issue, as a defendant is permitted only one 2255 application and it may be unwise to file it while an appeal is pending. If Ms. Massarone nevertheless wishes to file a 2255 application, she should use the court-approved form, and if she cannot obtain it, she should write the Court and the Court will send her one. The Clerk of Court is respectfully directed to send a copy of this endorsement to Reshma Massarone, No. 73873-510, FPC Alderson, Federal Prison Camp, Glen Ray Rd. Box A, Alderson, WV 24910.
>
> SO ORDERED.
>
> *Cathy Seibel*
> CATHY SEIBEL, U.S.D.J.
>
> 8/27/25

REPLY TO: Middlebury Office • WEBSITE: www.langrock.com • EMAIL: attorneys@langrock.com

MIDDLEBURY: 111 S. Pleasant Street, Middlebury, VT  05753 • (802) 388-6356 • Fax: (802) 388-6149
BURLINGTON: 210 College Street, Suite 400, Burlington, VT  05401 • (802) 864-0217 • Fax: (802) 864-0137

A Limited Liability Partnership Including a Professional Corporation

IMANAGE\272600\1\2577875.v1-7/28/25

**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA,**
Plaintiff,

v.

**RESHMA MASSARONE,**
Defendant/Movant.

**Case No.: 7:23-cr-00448-CS-1**

---

**MOTION UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 37(a)**

---

**COMES NOW** the Defendant, Reshma Massarone, and respectfully moves this Honorable Court, pursuant to Federal Rule of Criminal Procedure 37(a), to indicate that it would grant, or at least entertain, a motion for relief based on violations of Defendant's constitutional rights during critical stages of the proceedings. In support, Defendant states as follows:

---

### I. INTRODUCTION

This motion raises violations of Defendant's constitutional and statutory rights that occurred during critical stages of the criminal proceedings. In particular, Defendant suffered from ineffective assistance of counsel, attorney negligence and misconduct, counsel's ignorance of basic law, professional misconduct, and a conflict of interest.

---

### II. BACKGROUND AND GROUNDS FOR RELIEF

1. **Failure to Request and Review Discovery; Counsel's Inaction Regarding Withheld and Edited Evidence**
The prosecution edited and withheld video recordings critical to the defense. For example, at sentencing, the prosecutor quoted Defendant as saying, "she clearly told the police officer sending more than $2,500 would raise a red flag," based on a video call. However, the prosecution never provided the full video, and counsel failed to request or review it. In court, only selected clips were presented; Defendant never saw the complete recordings.

Furthermore, the Government sent discovery materials on a device that was incompatible with the jail's computers. As a result, Defendant never had access to her own discovery and was deprived of the opportunity to review the evidence against her. Counsel failed to take any action to remedy this issue or move the court for relief, further depriving Defendant of her constitutional rights.

Counsel also failed to request the full video which contained exculpatory evidence. The omitted portions would have shown the police repeatedly asking Defendant if he should kill the victim's daughter because she was "in the way." Defendant replied "no" and asked the police officer why he kept asking that question. This full video would have revealed the police luring and persistently pressuring Defendant into a crime she would never have otherwise committed and to which she was not predisposed. Instead, the prosecutor edited the video to fit the crime, and Defendant made several requests for counsel to obtain the full conversation, but counsel never did so.

Additionally, the prosecutor edited the police bodycam footage and used it in court to mislead the court regarding Defendant's actions. For example, when Defendant told the victim to "go to hell," the edited footage omitted the critical context: the victim was violating a restraining order, the police had been called to remove him, he fled from the police, and was arrested days later. This video recording was used negatively against Defendant in court, without the full and accurate context.

This allowed the prosecutor to mislead the court about Defendant's statements and about the existence of a second victim. In fact, the evidence showed Defendant never mentioned the daughter's name or suggested she was in danger. Counsel's failure to review and present this discovery prevented the court from learning the truth and contributed to the maximum sentence imposed. This constitutes a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and demonstrates ineffective assistance under *Strickland v.. Washington*, 466 U.S. 668 (1984).

2. **Failure to Understand the Offense, Adequately Investigate Key Facts and Witnesses, and Obtain Exculpatory Communications**

Counsel demonstrated a lack of understanding of both the facts and the law relevant to Defendant's case. Counsel incorrectly informed the court that Defendant did not qualify for a zero-point offender reduction, and when the judge requested important documents to support the defense, he claimed he forgot them in his office. Counsel failed to properly explain the nature of the offense to the court and presented his own version of the defense, rather than advocating for the defense consistent with the actual circumstances and Defendant's position.

At no point did counsel inform the court that the indictment falsely alleged Defendant traveled to Guyana and caused the victim to travel, as well. This was untrue, yet counsel never filed any motions or objections to correct this material misstatement in Defendant's defense.

Counsel did not adequately investigate the crime or interview key witnesses.. Instead, he instructed Defendant's husband to have family members write character letters, rather than interviewing them. Many of these family members, who were present at the funeral in Guyana when the alleged crime occurred, were willing and available to testify to Defendant's innocence and provide context. Counsel failed to present evidence to the court that the victim, in collaboration with a police officer, instigated, intimidated, encouraged, and lured Defendant into committing a crime that she would never have committed on her own. The facts showed Defendant was following the legal system, had no history of violence, and was being manipulated by those around her.

Moreover, counsel misrepresented to Defendant and her family that plea deals do not exist in federal cases, only in state cases, which is false and deprived Defendant of meaningful negotiation and understanding of her options. Defendant specifically requested that counsel obtain exculpatory evidence from her phone, including:

- A message where the police officer told Defendant that the victim was in the hospital waiting to die, and Defendant replied that this was a lie, as the victim was actually in his house in New Jersey.
- A conversation on 07/27/2023, in which the police officer told Defendant that the victim is "a mad man" and under pressure had suggested killing him, and the officer offered to send back the $2,500 since nothing happened, apologizing for everything. Defendant replied, "The $2,500 was initially for you to protect my safety, so keep it and don't worry about sending it back."
- On 07/19/23, Defendant called to discuss traveling to Guyana while the victim was still in New Jersey. After the police officer lured, encouraged, and manipulated Defendant by suggesting the only way for her to be safe was to give him $10,000 instead of using it for her trial attorney, Defendant fell for the trap on 07/21/23. The victim then traveled to Guyana on 07/22/23 and visited the embassy to file a complaint on 07/24/23, all while the police were following the victim's instructions to gather evidence against Defendant.

have been critical exculpatory evidence and could have strongly impacted the jury's decision at trial.**

Counsel made inappropriate comments to Defendant, such as telling her to be thankful the judge was a female in a male-dominated field and would "understand her circumstances," instead of focusing on actual legal arguments.

Counsel also failed to investigate or inform the court of the following critical facts:
- The $2,500 transfer at issue was sent to Guyana while the alleged victim was physically present in New Jersey, not Guyana.
- On July 19, 2023, when Defendant mentioned the victim's name, it was because she was planning to travel to Guyana and asked the police to confirm that the victim was not in the country, out of genuine fear for her own safety.
- Defendant's true intentions were evident in her emails to her family lawyer, in which she asked whether the order of protection would be effective and expressed fear for her life if she traveled to her grandmother's funeral.
- Counsel failed to interview Defendant's mother, who had witnessed the victim's abuse of Defendant since she was 15 years old. Defendant's mother could have testified that, in March 2023, the victim threatened, "I will ruin her life and watch her in handcuffs by the end of summer." The victim also told several family members, "I am waiting for the bitch to arrive so I can finish her."
- At the grandmother's funeral, the victim had hired over 20 police officers and was waiting for Defendant to arrive. Out of fear for her life, Defendant waited until the victim was back in New Jersey before considering traveling to Guyana.

**After Defendant was sentenced, she requested her attorney send her phone to her daughter so she could get the evidence needed for her appeal as new evidence. Instead, counsel spitefully gave the phone to Defendant's husband with full knowledge that he was going to divorce her. Her husband kept the phone for about two weeks, lied that he did not have it, and then gave it directly to his divorce lawyer, where it has remained since Defendant's conviction. Counsel and Defendant's husband worked together to ensure she had no access to her phone and the evidence necessary to defend herself.**

**Defendant specifically requested that counsel not communicate with her husband about her appeal, but he continued to communicate without her consent. Counsel claimed he mailed her appeal papers to her husband because her husband needed to fill out a section stating he would no longer support her financially and was filing for divorce. This was done before Defendant even knew about the divorce. Both also lied about ordering transcripts for her appeal.**

Counsel failed to present these facts, which would have shown Defendant's genuine fear and lack of criminal intent (mens rea). Instead, he failed to challenge the prosecution's narrative and did not provide the court with the true circumstances of the case.

3. **Failure to Investigate and Interview Key Witnesses; Coercion and Improper Plea Practices**
Counsel failed to conduct a proper investigation and did not interview key witnesses who could have provided critical information for the defense. In collaboration with Defendant's husband, who hired and paid counsel, he coerced Defendant into entering a plea agreement that exceeded her statutory maximum sentence.. Defendant was facing a statutory maximum of 120 months but was pressured into a plea for 151 to 188 months using a Pimentel letter. Counsel failed to explain the consequences of this plea and assured Defendant that he had enough mitigating facts to convince the judge to give her only 2 years. At sentencing, counsel forgot critical documents in his office and explicitly told the court he would not request a specific sentence, stating it was entirely up to the judge. Privately, he texted Defendant's husband that "the judge is known to be harsh and difficult." Counsel also falsely assured Defendant that the judge could not use the guideline sentence in her case because it was "outside the heartland of the charge."

Counsel further told Defendant that if she did not follow his instructions and insisted on going to trial, she would receive a 10-year sentence. While Defendant attempted to tell the court the truth, counsel wrote a note and handed it to her saying, "keep talking and you will get 10 years." The court paused due to confusion about the date of the offense, and counsel pressured Defendant to plead guilty, saying, "unless you like it at Westchester County Jail." Defendant was never informed of her speedy trial rights and was not represented by an attorney of her choice. She never received any legal mail from counsel during pretrial; her only means of communication with counsel was through her husband, who filtered all contact. Counsel never discussed any meaningful defense strategy with her, never reviewed the Pre-Sentence Investigation Report (PSI) or any addendum submitted to the court.

4. **Improper Relationship with Defendant's Husband; Conflict of Interest and Breach of Professional Duty**
Counsel formed an inappropriate and excessive relationship with Defendant's husband, meeting him several times at a hotel lobby in New Jersey and sharing evidence and strategy without Defendant's consent. Defendant's husband hired and paid counsel, directed the defense, and communicated excessively with counsel through texts, emails, and phone calls. Counsel's loyalty was to the husband, treating him as the actual client, and disregarded Defendant's wishes including her desire to go to trial. Defendant was excluded from critical decisions regarding her defense, and counsel used his own strategy rather than Defendant's. This conflict of interest and breach of confidentiality is a clear violation of *Holloway v. Arkansas*, 435 U.S. 475 (1978), and the Sixth Amendment right to effective counsel.

Furthermore, Defendant's husband was acting in bad faith, being unfaithful, and had an agenda to benefit from the sale of Defendant's home. Immediately after Defendant received the maximum statutory sentence, her husband abandoned her, removed her two daughters from her home, filed for divorce, and is now claiming half of her home equity.

---

### III. LEGAL ARGUMENT

Under *Strickland v. Washington*, 466 U.S. 668 (1984), ineffective assistance of counsel occurs when (1) counsel's performance falls below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for those errors, the outcome would have been different.
Under *Brady v. Maryland*, 373 U.S. 83 (1963), failure to disclose evidence favorable to the accused violates due process where the evidence is material to guilt or punishment.
Conflict of interest and breaches of confidentiality violate the Sixth Amendment right to counsel as articulated in *Holloway v. Arkansas*, 435 U.S. 475 (1978).
For a plea to be valid, it must be knowing, voluntary, and intelligent as required by *Boykin v. Alabama*, 395 U.S. 238 (1969).

The conduct described above constitutes cumulative and prejudicial violations of Defendant's rights during the most critical stages of the proceedings.

---

### IV. REQUEST FOR RELIEF

WHEREFORE, Defendant respectfully requests that this Court, under Rule 37(a), indicate that it would grant, or at least entertain, the following relief if the case were remanded:

1. **Vacate the conviction and/or sentence due to ineffective assistance of counsel, attorney negligence and misconduct, and constitutional violations;**
2. **Order an evidentiary hearing to fully address counsel's deficiencies and their impact;**
3. **Grant any other relief that the Court deems just and proper.**

**Respectfully submitted,**

_____
Reshma Massarone
Aliceville FCI
P.O. Box 4000
Aliceville, AL 35442
Dated: 05/25/25

---

**CERTIFICATE OF SERVICE**

I certify that a copy of this Motion was mailed to the United States Attorney's Office for the Southern District of New York on this date.

_____
Reshma Massarone
Dated: 05/25/25

## **V. ADDITIONAL LEGAL SUPPORT: CONSTITUTIONAL RIGHTS AND DUE PROCESS VIOLATIONS**

The movant asserts that the deprivation of discovery and ineffective assistance of counsel in this case rise to the level of constitutional violations warranting vacatur of conviction and/or judgment. The following cases support this assertion:

1. **United States v. Bagley, 473 U.S. 667 (1985):**
The Supreme Court held that suppression of evidence favorable to the accused violates due process where the evidence is material to guilt or punishment, regardless of whether the defense requested it. Here, the Government's failure to provide crucial discovery is analogous to a *Brady* violation, depriving the defendant of a fair trial.

2. **Kyles v. Whitley, 514 U.S. 419 (1995):**
The Court vacated the conviction due to the prosecution's failure to disclose exculpatory evidence, emphasizing the prosecution's duty to turn over all material evidence to the defense. This principle is directly applicable where the defendant is denied access to discovery material essential to the defense.

3. **United States v. Cronic, 466 U.S. 648 (1984):**
The Court recognized that if defense counsel fails to subject the prosecution's case to meaningful adversarial testing often due to lack of discovery prejudice is presumed and the conviction must be vacated.

4. **United States v. Morrison, 449 U.S. 361 (1981):**
The Supreme Court held that convictions must be set aside where the defendant's right to effective assistance of counsel was violated by government interference or counsel's failure to act.

5. **Ferrara v. United States, 456 F.3d 278 (1st Cir. 2006):**
The First Circuit vacated a conviction because the government failed to disclose exculpatory evidence and counsel was ineffective in failing to investigate, paralleling the deprivation suffered by movant.

6. **United States v. Rodriguez, 582 F.3d 486 (3d Cir. 2009):**
Conviction reversed on grounds that defense counsel failed to obtain discovery of a key report, underscoring the due process requirement of access to evidence.

7. **United States v. Loughry, 660 F.3d 965 (7th Cir. 2011):**
Conviction vacated for prosecution's failure to disclose evidence and defense counsel's failure to seek it.

8. **Societe Internationale v. Rogers, 357 U.S. 197 (1958):**
The Supreme Court noted that judgment may be set aside under Rule 37 where a party is deprived of a fair opportunity to present its case due to improper discovery sanctions.

9. **Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639 (1976):**
The Court addressed the severe sanctions available under Rule 37 for discovery abuse, noting that such remedies are available when a party's case is prejudiced by unjustified discovery failures.

**In light of these precedents, the deprivation of discovery and ineffective assistance of counsel in the present case constitute violations of the movant's constitutional rights to due process and effective counsel under the Fifth and Sixth Amendments, respectively. Accordingly, vacatur of the conviction/judgment is both appropriate and necessary.**

---

**Respectfully submitted,**

**EXHIBIT 1**
**Declaration of Reshma Massarone in Support of Rule 37 Motion**

---

I, Reshma Massarone, declare as follows in support of my motion under Federal Rule of Criminal Procedure 37(a):

1.. **Attorney Matthew D. Myers' Negligence, Misconduct, and Conflict of Interest**
   - Mr. Myers represented me from October 21, 2023 to October 31, 2024.
   - He charged me $50,000, which I paid by mortgaging my home, but his services were grossly inadequate and detrimental to my case.
   - He failed to provide meaningful assistance, did not investigate the facts or interview key witnesses, and failed to request or review critical discovery in my case.
   - Despite my explicit instructions, he continued to communicate with my husband, Jeffrey Massarone, who paid him, directed the defense, and acted in his own interests.
   - Mr. Myers formed an inappropriate and excessive relationship with my husband, meeting him at a hotel in New Jersey several times, sharing evidence and strategy, and treating him as the actual client.
   - I was excluded from all meaningful decisions in my case, and counsel used his own defense strategy rather than defending me or my stated wishes.

2. **Discovery and Evidence Withheld or Ignored**
   - The Government sent discovery materials on a device that was incompatible with jail computers, and I never had access to my own discovery.
   - I repeatedly asked Mr. Myers to request the full, unedited video evidence, but he failed to do so.
   - The prosecution edited and withheld video recordings and bodycam footage that would have shown the police officer repeatedly suggesting violence against the victim's daughter, to which I repeatedly replied "no" and questioned why he kept asking that.
   - The edited videos omitted evidence of the police luring and pressuring me into a crime I was not predisposed to commit, and omitted the context of a bodycam video where I told the victim to "go to hell" as he was violating a restraining order and was eventually arrested.
   - These videos were used in court to mislead the judge and contributed to my maximum sentence.
   - Mr. Myers never requested my phone records or text messages between the victim and the police officer, despite my requests. The police and victim were together gathering evidence against me.

3. **Failure to Obtain and Protect Exculpatory Evidence**
   - After I was sentenced, I asked Mr. Myers to send my phone to my daughter to help with my appeal and secure evidence. Instead, he gave it to my husband, knowing he was seeking a divorce.
   - My husband kept the phone for two weeks, lied about having it, and then gave it directly to his divorce lawyer, where it remains. This prevented me from accessing vital evidence for my defense and appeal.
   - Mr. Myers and my husband worked together to ensure I had no access to my phone or exculpatory evidence.

4. **Failure to Investigate, File Motions, or Present My Defense**
   - Mr. Myers never filed motions to correct the indictment, which falsely claimed that I traveled to Guyana and caused the victim to travel.

   - He failed to interview family members who were present in Guyana and could have testified on my behalf.
   - He told my family to write character letters instead of interviewing them as witnesses, missing crucial testimony that could have changed the outcome.
   - I specifically requested that he not communicate with my husband about my appeal, but he continued to do so without my consent.
   - He claimed he mailed my appeal papers to my husband because my husband needed to fill out a section stating he would no longer support me financially and was filing for divorce before I even knew about the divorce.
   - Both Mr. Myers and my husband lied about ordering transcripts for my appeal.

5. **Coercion and Misleading Advice Regarding Plea and Sentencing**
   - Mr. Myers, in collaboration with my husband, coerced me into an open plea based on a Pimentel letter, exceeding my statutory maximum sentence.
   - He failed to explain the plea's consequences, falsely told me and my family that plea deals do not exist in federal cases (only state cases), and assured me the judge could not use the guideline sentence for my case.
   - At sentencing, he forgot critical documents in his office, failed to request a specific sentence, and told the court it was up to the judge.
   - He pressured me by saying if I didn't plead guilty or "listen to him," I would get 10 years, and while I tried to speak in court, he handed me a note saying, "keep talking and you will get 10 years."
   - I was never informed of my speedy trial rights, never received legal mail from him pretrial, and had no meaningful defense strategy discussed with me.

6. **Resulting Harm and Ongoing Prejudice**
   - Immediately after I received the maximum sentence, my husband abandoned me, removed my daughters from my home, filed for divorce, and is now claiming half of my home's equity.
   - The actions of Mr. Myers and my husband deprived me of effective representation, due process, and access to evidence critical to my defense and appeal.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

---

**Dated:** May 23, 2025
**Respectfully submitted,**

_____
Reshma Massarone
Aliceville FCI
P.O. Box 4000
Aliceville, AL 35442

Reshma Massarone
Aliceville FCI
P.O. Box 4000
Aliceville, AL 35442

May 23, 2025

First Judicial Department
Attorney Grievance Committee
Supreme Court, Appellate Division, First Department
180 Maiden Lane
New York, NY 10037

Dear Members of the Grievance Committee,

Subject: Complaint Against Attorney Matthew D. Myers

I am writing to formally file a complaint against my former attorney, Matthew D. Myers, who represented me from October 21, 2023, to October 31, 2024. I believe that he has committed multiple violations that warrant investigation and action by your committee.

During his tenure representing me, Mr. Myers charged $50,000 for services that were not provided and failed to offer meaningful assistance in my legal defense. Despite this substantial fee, his performance was grossly inadequate and detrimental to my case. His conduct demonstrated bias and unethical behavior, adversely impacting my legal standing. Despite my objections, he continued communicating with my husband about my case, ultimately leading to personal and legal consequences, including my husband filing for divorce.

### Legal Violations:

1. **Ineffective Assistance of Counsel**: Under the precedent set by *Strickland v. Washington*, Mr. Myers' performance was deficient and prejudiced my defense. This violated my Sixth Amendment right to effective legal representation. He failed to investigate the facts or interview key witnesses, resulting in a lack of crucial evidence.

2. **Due Process Violations**: I was denied access to my discovery materials, which were provided on a device incompatible with the jail's computers. Mr. Myers failed to take action to resolve this issue, such as filing a motion, and did not request full video recordings essential for my defense. This negligence resulted in the prosecutor using excerpts of the recordings to mislead the judge about my intentions, leading to a harsher sentence.

3. **Breach of Attorney-Client Privilege**: Mr. Myers communicated with my husband without my consent, effectively treating him as the client. This breach of privilege and conflict of interest violated my rights and compromised my case. My daughter has phone records showing extensive communication between them.

4. **Coercion into Plea Deal**: Mr. Myers, in collaboration with my husband, coerced me into an open plea based on misleading information, disregarding the statutory maximum sentence and failing to explain plea consequences. They used a letter from the prosecutor to pressure me into pleading guilty, promising a sentence of 151 to 188 months, even though my statutory maximum was 120 months.

5. **Negligence and Misconduct**: Mr. Myers did not conduct a thorough investigation, lacked communication, and was unprepared. During sentencing, he forgot key evidence at his office and failed to object to false statements by the prosecutor.

6. **Unethical Behavior**: Mr. Myers was dishonest in court, misrepresented his interactions with me regarding plea agreements, and provided false assurances about sentencing. He claimed to have reviewed the plea five times with me, which was untrue.

7. **Bias and Conflict of Interest**: His improper relationship with my husband impaired his professional judgment, favoring my husband's interests over mine. My husband, acting in bad faith, sought his own financial gain, and Mr. Myers' loyalty appeared to be with him.

8. **Billing for Non-Services**: Mr. Myers advised unnecessary expenditures and refused to provide a detailed account of the $50,000 fee. He suggested paying $10,000 for unrelated legal representation and $4,500 for an expert witness that had no impact on my case.

9. **Inadequate Preparation**: Mr. Myers failed to adequately prepare for trial. His poor strategy decisions were not in my best interest.

10. **Failure to Disclose Conflict**: My husband emailed Mr. Myers about his intention to divorce me and asked him to keep it confidential. This was later revealed by my divorce lawyer.

### Request for Investigation:

Due to my circumstances, I have limited access to all evidence. I kindly request that your investigation includes a review of all communications between Mr. Myers and my husband, Jeffrey Massarone. I have attached relevant documents, including text messages and emails that support my claims.

I trust that your committee will address these serious concerns. Please let me know if you require further information.

Thank you for your time and attention to this matter.

Sincerely,
Reshma Massarone

10/7/24, 7:39 AM                    Screenshot_20241007_073545_Messages.jpg

7:35                        45%

← M Matthe...      📞   📹   ⋮

Thank you for all the kindness in your email to me the other day. I appreciate it. 🙏

I was going to call her and tell her that she was a solid person with a bright future but it will go to waste..she's been polluted by her mother's insanity if she turned against a guy like you...We should just move on

That's my plan, moving on...

   Text mess...   

https://mail.google.com/mail/u/0/#inbox/CjgC...  1/1

> She even accused Anjali with having an affair with me, and Anjali stopped talking to her for almost 2 months! Now Reshma and the girls are all best friends now and have turned against me...

She's mentally ill

> Agreed. Be careful of Anjali...

Yep

> Thank you for all the

10/7/2024 12:12 PM   Case 7:23-cr-00448-CS   Document 51   Filed 08/27/25   Page 13 of 16   Page 19 of 27

10/7/24, 7:38 AM                    Screenshot_20241007_073515_Messages.jpg

7:35                           45%

← M Matthe...       📞   📹   ⋮

Yes. I actually believe she needs to be medicated. Emailing me that you slept with all her friends. Accusing me of never meeting with prosecutors.
I should have asked for a plea deal but didn't!
Just crazy off the charts kind of stuff. We need to move on. Her case was difficult and the judge was very difficult. She still doesn't understand her actions. Sad.

5:44 PM              ↓

⊕      Text mess...  

|||           ○           ＜

https://mail.google.com/mail/u/0/#inbox/CllgCJfscdmvtMmqsKMTMsrhkNSdcFLlKwdXJpDpxXRXBVdwWpMhzGHRSXSFNCzNrbCffcLXhZL?projector... 1/1

10/7/24, 7:37 AM     Screenshot_20241007_073441_Messages.jpg

7:34

← Matthe...

Jeff:
Your "former" wife has lost her mind. She is saying things that are wildly inaccurate and false. It amazes me that the people who tried to help her she has instantly turned against. It's odd to say but I'm now beginning to believe she is as out of control as Parm.
I had to block her on CorrLinks.
Matt

Text mess...

https://mail.google.com/mail/u/0/#inbox/CllgCJfscdrrrvtMmqsKMTMsrhkNSdcFLtKwdXJpDpxXRXBVdwWpMh2GHRSXSFNCzNrbCffcLXhZL?projector... 1/1

10/7/2024 12:12 PM Case 7:23-cr-00448-CS  25POCA-GWRAX->18458050807 Document 51  Filed 08/27/25   Page 15 of 16  Page 16 of 27

10/7/24, 7:32 AM                                                  Gmail - (no subject)



Jeffrey Massarone <drmassarone@gmail.com>

# (no subject)
1 message

**Matthew Myers** <matthewmyersesq@gmail.com>                Fri, Oct 4, 2024 at 4:17 PM
To: Jeffrey Massarone <drmassarone@gmail.com>

Jeff:

I could go on for pages and pages in response to your very sad letter. You are a man of great character who did everything possible. Reshma still doesn't understand a single thing about her case. It is pure ignorance in the utmost form to be blaming you. She doesn't understand she tried to kill another human being. She ran into a very tough judge who has a very reputation for being unsympathetic. How this is anyone's fault but Reshma's is an absurd position. The fact that she doesn't understand shows me she is very very off kilter. I'm surprised Anjali isn't smarter in buying in to all of Reshma's stories and excuses and blame game.

We will talk soon. You have my utmost respect. You'll move on in life.

Matt

# Langrock
## SPERRY & WOOL

111 S. Pleasant Street
Middlebury, VT 05753



criminal Docketing



Tammi Hellwig, Clerk of Court
United States District Court for the Southern
Distirct of New York
Daniel Patrick Moynihan
U.S. Courthouse
500 Pearl Street
New York, NY 10007

RECEIVED
AUG 25 2025
CLERK'S OFFICE
S.D.N.Y.